MILLS-JENNINGS OF OHIO, INC., ET AL, APPELLANTS, *v.*
DEPARTMENT OF LIQUOR CONTROL ET AL., APPELLEES.

(No. 81-760—Decided May 26, 1982.)

*Messrs. Ward, Kaps, Bainbridge, Maurer, Bloomfield & Melvin* and *Mr. Charles T. Kaps,* for appellant Mills-Jennings of Ohio, Inc.

*John A. Connor II, Co., L.P.A., Mr. John A. Connor, II,* and *Mr. Darrell E. Fawley, Jr.,* for appellant Walter Lazuka.

*Mr. William J. Brown,* attorney general, and *Mr. Marc E. Myers,* for appellees.

DOUGLAS, J.

## I.

The issue presented for our determination is whether Draw Poker machines are gambling devices *per se* as defined in R. C. 2915.01(F). Appellants contend, and the trial court agreed, that the device is an amusement device and not a gambling device per se. The foundation of the trial court's decision was that the successful playing of the machines required some skill and the results obtained were not wholly dependent upon chance. Appellees contend, and the Court of Appeals held, that the intent of the General Assembly as set forth in the statute is clear and that the playing of poker is a game of chance and any apparatus designed for use in connection with a game of chance is a gambling device.

R. C. 2915.01(D) reads:

" 'Game of chance' means *poker,* craps, roulette, a slot machine, a punch board, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely or wholly by chance." (Emphasis added).

Thus the first question to be answered is whether the game being played on the machine in question is the game of "poker." An exhaustive review of the extensive record in this case shows that appellants' own witnesses testified at trial that the game played on a Draw Poker machine is the game of poker. Whether the game being played is on a video screen or a card table makes no real difference. In whatever way the game is played the object is the same and that is to win by obtaining the best hand possible. Therefore the game being played on the machine is a game of "poker" and as such falls within the purview of R. C. 2915.01(D).

Having so determined, we now turn our attention to R. C. 2915.01(F) which reads:

" 'Gambling device' means"

" * * *

"(3) A deck of cards, dice, gaming table, roulette wheel, slot machine, punch board, or *other apparatus designed for use in connection with a game of chance.*" (Emphasis added.)

We have determined that the game being played on the machine is the game of poker and that "poker" is a game of chance. Applying these findings to R. C. 2915.01(F)(3), we further find that the machine in question is an "apparatus

designed for use in connection with a game of chance" and therefore is a gambling device as set forth in R. C. 2915.01(F).

Appellants have cited this court to a number of cases concerning statutory construction. All the cases cited are clearly distinguishable on their facts. The proper principle of statutory construction is that words should be given their common, ordinary and accepted meaning unless the General Assembly has clearly expressed a contrary intention. *State, ex rel. Brilliant Electric Sign Co.,* v. *Indus. Comm.* (1979), 57 Ohio St. 2d 51, 54; *State* v. *Singer* (1977), 50 Ohio St. 2d 103, 108. The plain and ordinary meaning of the words found in R. C. 2915.01(D) and 2915.01(F)(3) makes Draw Poker machines gambling devices per se.

## II.

Appellants raised other issues in the trial court. Nevertheless, the trial court felt that in deciding the machine in question was not a gambling device per se, it had granted to appellants the ultimate relief sought and any further decision was unnecessary. We comment further in view of the important issues raised by appellants and also because the trial court, by journal entry dated April 22, 1981, granted a restraining order against the Department of Liquor Control (which order remains in effect) prohibiting the department " * * * from seizing, taking, confiscating or otherwise destroying any of the poker machines that were the subject of this controversy * * * " until the court conducts a hearing on the issue of confiscation. The trial court set forth that it would proceed with such a hearing after and if this court decided that the Draw Poker machine was a gambling device per se.

The other issues raised by appellants in the trial court were:

(1) That Ohio Adm. Code 4301: 1-1-53(B), a regulation of the Liquor Control Commission, is overly broad and in conflict with the present public policy of Ohio;

(2) That summary seizure of property, owned by third parties, from liquor permit premises by Department of Liquor Control agents is a denial of due process; and

(3) That actions of the Department of Liquor Control in confiscating, seizing, refusing to return and/or threatening to

destroy the machines in question are a violation of R. C. 2933.41 and exceed the authority granted the department by R. C. Chapters 4301 and 4303.

These issues were not ruled upon by the trial court, nor were they raised or directly ruled upon by the Court of Appeals. It is elementary that questions not raised or passed upon by the lower courts will not be ruled upon by the Supreme Court. *In re Adoption of McDermitt* (1980), 63 Ohio St. 2d 301, 307. Thus we make no specific ruling on appellants' propositions of law Nos. 3, 4 and 5, but do feel constrained to comment as follows.

The effort to control gambling in this state is a never-ending fight. Historically in Ohio the gambling instinct was considered as an evil in and of itself. As early as the year 1790, by a law passed by the Governor and Judges of the Northwest Territory at Vincennes, it was provided that "any species of gaming, play or pastime whatsoever" whereby money may be won or lost was prohibited. Likewise the use of billiard tables "or other gaming tables, or any other machine" for gambling was prohibited. See 1 Chase, Statutes of Ohio 105. Effective October 1, 1795, it was provided that tavern keepers or inn holders were prohibited from permitting "cards, dice, billiards, or any instrument of gaming to be made use of" on the premises operated by them as such tavern or inn. *Id.,* at page 199.

The first Constitution of Ohio, adopted in 1802, made no direct reference to lottery or gambling. In 1805, the General Assembly passed an Act making various forms of gambling illegal. *Id.,* at page 503. In 1807, it was made an offense to conduct a lottery "without a special act of the legislature." 5 Ohio Laws 91. From 1807 to 1828 the General Assembly passed a number of Acts providing for the raising of money, by way of lottery, to make public improvements. In 1830, the General Assembly prohibited the further use of lotteries or schemes of chance for any purpose, 28 Ohio Laws 37, and this prohibition was carried over into the Constitution adopted in 1851. Section 6, Article XV of the Constitution of 1851 provided that "lotteries, and the sale of lottery tickets, for any purpose whatever shall forever be prohibited in this State." It is interesting to note that when the people of the state adopted the

Constitution of 1851, nothing therein was said of gaming or gambling as such, or in the Amendments to that Constitution later adopted. The prohibition of the Constitution was against lotteries and the sale of lottery tickets only. As we have seen, the adverse attitude of the General Assembly toward the use of gambling machines or devices was so pronounced, and their use so adverse to the policy of the state, that it apparently was thought unnecessary to write any prohibition thereof into the Constitution. It was only because the legislatures had seen fit to employ the scheme of a lottery for public and private purposes that the people considered it necessary to prohibit lotteries in the Constitution. This is clearly demonstrated by the enactment of Ohio's first anti-gambling provisions, on February 14, 1807, under the title, "an act, for the prevention of certain immoral practices." Every " * * * species, kind or way of gambling at hazard or chance, under any pretense whatever, for money or any other article of value, and betting thereon," were prohibited. 3 Ohio Laws 218. Thus, at the time of the Constitutional Convention of 1851, all gambling, whether games or schemes of chance, was illegal in Ohio.

Relying on the foregoing constitutional provisions, courts in Ohio treated the Constitution as broadly prohibiting lotteries in the generic sense, thus extending the threat of unconstitutionality to other games and schemes of chance. Any device or scheme which served to arouse the gambling instinct was equatable with a lottery for the purposes of applying the public policy expressed in the Constitution. Although the courts seldom relied solely on the Constitution in anti-gambling litigation, it was repeatedly invoked as evidencing a strong public policy against gambling while at the same time the conduct was held to be statutorily proscribed. See *Kroger Co.* v. *Cook* (1970), 24 Ohio St. 2d 170; *Stillmaker* v. *Dept. of Liquor Control* (1969), 18 Ohio St. 2d 200; and *Westerhaus Co.* v. *Cincinnati* (1956), 165 Ohio St. 327. Thus the general proposition was that just because the Constitution referred only to lotteries, this did not mean that other forms of gambling were allowed.

This entire concept was dramatically changed by the state which, through its own initiative, significantly contributed to the weakening of the clear and long-standing anti-

gambling public policy in Ohio. The promulgation of the new Ohio Criminal Code in 1974 (and the 1975, 1976, and 1977 amendments thereto) with regard to R. C. Chapter 2915, the constitutional authorization, effective November 5, 1975, for bingo conducted by a charitable organization for charitable purposes and a lottery operated by the state, added to the already existing pari-mutuel wagering on horse racing, substantially changed the public policy with regard to gambling as it existed when Ohio Adm. Code 4301:1-1-53(B) (hereinafter "Reg. 53[B]") was adopted. In addition there is the well-reasoned opinion of Judge Mahoney of the Court of Appeals for Summit County in *State, ex rel. Gabalac,* v. *Congregation* (1977), 55 Ohio App. 2d 96, to now consider.

All the foregoing history is significant in any discussion and review of Reg. 53(B). This regulation reads:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any device, machine, apparatus, book, record, forms, tickets, papers or charts *which may or can be used* for gaming or wagering or the recording of wagers, pools, or chances on the result of any contest, or allow or conduct gaming or wagering on such premises or any game of skill or chance." (Emphasis added.)

Apellants argue that this regulation is overbroad and is in general conflict with the present public policy in Ohio with respect to gambling. Viewed in the context of the recently enacted constitutional and statutory provisions, the application of Reg. 53(B) by the Liquor Control Commission does give the appearance of now being overly broad and subject, in the proper case, to constitutional attack. During oral argument, counsel for the appellees conceded that the regulation, when being interpreted and enforced, should not go beyond the specific provisions of the Criminal Code as revised in 1974 and as subsequently amended. It would appear that this should be specifically so with regard to R. C. 2915.01 and 2915.02.

Although this court generally agrees with this position, the facts in this case do not warrant any further finding by this court at this time with regard to Reg. 53(B), especially

when neither the Court of Appeals nor the trial court ruled specifically on the issue.

Appellants' fourth and fifth propositions of law deal with the issue of confiscation and destruction of the machines by liquor control agents. Without discussing the issues in detail, suffice to say that appellants contend that there are no provisions of law which give authority to agents of the department to seize and destroy property of the nature involved in this case. Appellants concede that the department has the authority to seize and destroy some types of property but that such authority is limited to the provisions of R. C. 2933.41, 4301.45 and 4301.53. Appellees contend that the decision of this court in *Stillmaker, supra,* and R. C. 2933.41(C) are dispositive of the question. Clearly the issue was not raised or decided in *Stillmaker,* and the serious question of a liquor enforcement agent confiscating (and destroying) property, which belongs to a third party, from liquor permit premises, has not been specifically decided by this court. In view of the fact that this issue was properly raised by appellants at the trial court level and further that the trial court specifically reserved to itself jurisdiction over the question, the cause will be remanded to the trial court for further consideration of those matters that are yet pending in this case.

Accordingly, the judgment of the Court of Appeals in finding that the Draw Poker machines in question are gambling devices per se is affirmed. Further, this cause is remanded to the trial court for consideration of the issues of the right of liquor enforcement agents to confiscate and destroy property obtained from liquor permit premises under the authority of Reg. 53(B).

*Judgment accordingly.*

LOCHER, HOLMES and KRUPANSKY, JJ., concur.

W. BROWN, Acting C. J., concurs in Part I of the opinion, but finds the discussion in Part II unnecessary.

SWEENEY and C. BROWN, JJ., dissent.

DOUGLAS, J., of the Sixth Appellate District, sitting for CELEBREZZE, C. J.