[Cite as *Conny Farms, Ltd. v. Ball Resources, Inc.*, 2011-Ohio-5472.]
STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CONNY FARMS, LTD., | ) | |
| | ) | CASE NO. 09 CO 36 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| BALL RESOURCES, INC, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Common Pleas
Court, Case No. 08CV833.

JUDGMENT:      Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellant:      Attorney Scott Zurakowski
Attorney Stephan Wright
4775 Munson St. NW
P.O. Box 36963
Canton, OH 44735-6963

Attorney Erik L. Walter
60 South Park Place
Painesville, OH 44077

For Defendants-Appellees:      Attorney John Rambacker
825 South Main Street
North Canton, OH 44720

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: September 27, 2011

DeGenaro, J.

**{¶1}** Plaintiff-Appellant, Conny Farms Ltd., appeals the judgment of the Columbiana County Court of Common Pleas granting summary judgment in favor of Defendants-Appellees[1] in a suit concerning the validity of two oil and gas leases on Conny Farms' property. The trial court granted summary judgment against Conny Farms due to a judicial ascertainment clause contained in both leases. Conny Farms argues this was erroneous because: (1) judicial ascertainment clauses are against public policy in Ohio; (2) the judicial ascertainment clause should not be enforced because the leases expired under their own terms pursuant to habendum clauses; and (3) genuine issues of material fact preclude summary judgment.

**{¶2}** Judicial ascertainment clauses are unenforceable in Ohio as against public policy, thus, the trial court erred by granting summary judgment in favor of Appellees and denying Conny Farms' summary judgment on this basis. But because the trial court concluded that the judicial ascertainment clause was enforceable, it did not rule on the merits of Conny Farms' remaining claims, and we must give the trial court the opportunity to do so. Accordingly, the judgment of the trial court is reversed, and the case remanded.

### Facts and Procedural History

**{¶3}** Conny Farms is the record title owner of land in Columbiana County. Since 1950, there have been two oil and gas leases on that land, which were originally held by East Ohio Gas Company (nka Dominion East Ohio), but are now held by Appellees.[2] For convenience, the parties refer to the leases as the Gibson lease and the Thompson lease. The two leases are identical except for the dollar amounts, several dates, and the names of the original lessors.

**{¶4}** There was never a well drilled on the property, it was used for gas storage purposes only. Michael and Jennifer Conny purchased the property on October 7, 2005. Prior to purchasing the property, the Connys were provided with a title commitment which revealed the existence of the leases. The Connys transferred the property to Conny Farms Ltd. on September 6, 2006. Michael and Jennifer Conny are the sole members of

---

[1] Chowder Gas Storage Facility, LLC; Ball Resources, Inc., Bass Energy, Inc.; William E. Blair; Richard W. Petticrew; Jeffrey B. Petticrew; C. Richard Petticrew; and 5 Star, LLC.

[2] Chowder holds a 60% working interest in the leases, the other Appellees own the remaining aggregate.

Conny Farms Ltd. Both the Connys and Conny Farms admit they had knowledge of the leases prior to taking ownership to the property.

{¶5} In a July 2, 2008 letter to lessees Ball Resources Inc. and William E. Blair, counsel for Conny Farms/The Connys stated the leases terminated because no payments had been made since the Connys took ownership of the property in 2005, and demanded cancellation of the leases.

{¶6} Counsel for Ball Resources and Blair responded in a July 16, 2008 letter that he was aware of the transfer of the property to the Connys since his office handled the closing, noted the Connys were provided with the leases were represented by independent third-party counsel in connection with that transaction, and stated with regard to the notice provision in the leases: "It is my understanding that Mr. Conny never notified Dominion as to the transfer of ownership in this property and did not notify my clients prior to the notification contained in your July 2, 2008 correspondence. Based upon your July 2, 2008 correspondence, we will now transfer the storage rental to Mr. Conny in accordance with the terms of the subject leases."

{¶7} And in a July 23, 2008 follow-up letter, counsel for Ball Resources and Blair provided documentation of the storage rental payments made by their predecessor in interest, Dominion, to the Connys' predecessor-in-interest, Klaus Forester, from April 2001 through May 2005. This letter went on to state:

{¶8} "Storage rental payments thereafter were suspended by Dominion East Ohio since your client [Conny Farms] did not notify them of the real estate transfer. Based upon the notification contained in your July 2, 2008 correspondence regarding this transfer, these suspended funds will be transferred to Mr. Conny in the immediate future. Based upon this payment history and the express terms of the subject oil and gas leases, we believe that our leases remain valid and will proceed accordingly."

{¶9} Less than one month later, Conny Farms filed a multi-count complaint which hinged on the allegation that Appellees breached the leases by failing to make any royalty or rental payments; and/or that the leases expired under their own terms because no production or storage of gas had occurred upon or under the property by Appellees or by

their predecessor-in-title, Dominion. Appellees answered, and both sides filed cross-motions for summary judgment. On October 16, 2009, the trial court issued a judgment entry denying Conny Farms' motion and granting Appellees' motion, based upon the judicial ascertainment clause:

{¶10} "The Court declines to set aside the [judicial ascertainment clause] cited above. There is an abundance of authority, as cited by counsel for Defendant, that leases are contracts and that the parties' obligations should be defined by that contract. The Court finds that on the basis of the types of evidence that the Court may consider pursuant to Rule 56 that there is no genuine issue of material fact; that the subject leases are valid; and that Plaintiff's claims against the Defendants are without merit."

{¶11} Conny Farms filed a timely notice of appeal, after which Chowder Gas filed a motion for sanctions and attorney fees with the trial court for having to defend the motion for summary judgment. Pursuant to a limited remand from this court, the trial court denied Chowder Gas' motion for attorney fees and sanctions, reasoning: first, that it did not reach the underlying issues raised by Conny Farms when it entered summary judgment; second, that there is no controlling law regarding the validity of judicial ascertainment clauses; and finally, that there had been ongoing negotiations prior to filing suit.

### Enforceability of Judicial Ascertainment Clauses

{¶12} Conny Farms asserts as its sole assignment of error:

{¶13} "The trial court erred in granting summary judgment in favor of the Defendants/Appellees and against Plaintiff/Appellant, Conny Farms, Ltd."

{¶14} A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the party against whom the motion is made, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to a judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, at ¶10. The party moving for summary judgment "bears the initial

responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. Id. at 293.

{¶15} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶5. And it is well-established that issues raised in summary judgment motions but not considered by the trial court will not be ruled upon by the appellate court. *Mills-Jennings, Inc. v. Dept. of Liquor Control* (1982), 70 Ohio St.2d 95, 99, 435 N.E.2d 407; *Ochsmann v. Great American Ins. Co.*, 10th Dist. No. 02AP-1265, 2003-Ohio-4679, at ¶21.

{¶16} The trial court, via summary judgment in favor of the defendants, declined to set aside the judicial ascertainment clause in both leases, which states:

{¶17} "It is agreed that this lease shall never be forfeited or cancelled for failure to perform, in whole or in part, any of its covenants, conditions or stipulations, until it shall have been first finally judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions or stipulations."

{¶18} The validity of judicial ascertainment clauses is an issue of first impression in Ohio.[3] Despite Conny Farms' citation to *Tisdale v. Walla* (Dec. 23, 1994), 11th Dist. No. 94-A-0008, there are no Ohio cases that discuss whether judicial ascertainment clauses are against public policy. Although *Tisdale* involved a judicial ascertainment clause, the outcome of the case did not turn on its enforceability. Rather, the court in *Tisdale* held that the lease had expired automatically due to the operation of a habendum clause, thus obviating the lessor's need to seek a judicial determination of whether the lessee had forfeited the lease; that the judicial ascertainment clause cannot affect the

---

[3] Appellees incorrectly claim this argument was waived. Conny Farms raised it in its motion for summary judgment and its brief in opposition to Appellees' motion for summary judgment, but relies on different cases to support the argument on appeal.

operation of the habendum clause. Id. at *4.

**{¶19}** Conny Farms relies on *Wellman v. Energy Resources, Inc.* (2001), 210 W.Va. 200, 557 S.E.2d 254, and the cases cited within it, which held judicial ascertainment clauses are against public policy for three reasons. First, the court noted that judicial ascertainment clauses require courts to try cases piecemeal, which is generally disfavored, and second, that the clauses would require at least two trials and two judgments and would improperly convert trial and appellate courts into "mere boards of arbitration." *Wellman* at 205, 206, citing *Frick-Reid Supply Corp. v. Meers* (Tex.Civ.App.1932), 52 S.W.2d 115, 118. Finally, the court expressed concern over the unequal bargaining power: "[O]ften in the oil and gas lease situation, the landowner is a relatively small operator with limited resources and the lessee often has substantially greater resources. 'Judicial ascertainment' clauses in such situations might enable the lessee to subject the lessor to needless and unfair pressure to obtain concessions." *Wellman* at 206, citing *Melancon v. Texas Company* (1956), 230 La. 593, 624, 89 So.2d 135.

**{¶20}** In sum, the *Wellman* court held:

**{¶21}** "West Virginia, like other jurisdictions, has recognized that economy of judicial effort is a public policy concern. * * * West Virginia has also long adhered to the ancient legal principle that Nemo debet bis vexari pro una et eadem causa, or that no one should be twice vexed by one and the same cause, or, more freely translated, that one should not have to undergo repeated litigation over the same matter. * * * Finally, the Court believes that the purpose of the legal system is to provide final resolution of legal controversies and not to provide a device to enable one party to grind another down through repetitious litigation until the other submits.

**{¶22}** "In short, the Court believes there are compelling public policy reasons for holding that "judicial ascertainment" clauses in oil and gas leases, which, in effect, open the door for repeated litigation over the same issues, are not enforceable on this State. On the other hand, the Court can see no reason for holding them enforceable.

**{¶23}** "In view of this, and in view of the fact that other jurisdictions have rejected

such clauses, this Court holds that 'judicial ascertainment' clauses in oil and gas leases in West Virginia are void under the public policy of this State and do not preclude a court in which a controversy over an oil and gas lease is tried from rendering a final judgment and finally resolving that controversy." (Internal citations omitted.) *Wellman* at 207-208.

**{¶24}** Appellees cite cases from other state courts which have upheld judicial ascertainment clauses, although often without much discussion. See *Gillette v. Pepper Tank Co.* (Colo.App.1984), 694 P.2d 369, 374 (concluding judicial ascertainment clauses are not void; declining to follow *Frick-Reid*); *Melancon v. Texas* Co. (1956), 230 La. 593, 89 So.2d 135 (concluding judicial ascertainment clause could apply, but only to a bona fide dispute as to which there is a real disagreement in good faith between the parties). See, also id. at 630 (McCaleb, J., dissenting): "This [judicial ascertainment] clause is clear and explicit; it is the law between the parties and should be given full force and effect by this Court. * * * It simply signifies the clear intent of the parties to be that the lease is earned when the lessee has secured production and that, thereafter, it shall not be lost or forfeited without first having a judicial ascertainment of the breach and then giving lessee an opportunity to perform its obligation. Public policy does not preclude the parties from thus contracting and the majority does not place its decision on that basis." (Internal citations omitted.)

**{¶25}** Appellees also point to Ohio Supreme Court case law holding that oil and gas leases are like any other contract and that the language within them is controlling between the parties. See *Harris v. Ohio Oil Co.* (1897), 57 Ohio St. 118, 129, 48 N.E. 502 ("The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." See, also, *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 2010-Ohio-4573, 942 N.E.2d 1109 at ¶61 (a Seventh District case quoting *Harris* for this proposition.)

**{¶26}** In considering the arguments raised by the parties, we are mindful that "[i]n

considering whether a provision in a contract is against 'public policy' [courts] must remember that the freedom to contract is fundamental, and that we should not lightly disregard a binding agreement, unless it clearly contravenes some established or otherwise reasonable public interest." *Hurst v. Enterprise Title Agency, Inc*, 157 Ohio App.3d 133, 2004-Ohio-2307, 809 N.E.2d 689, at ¶19. However, we are persuaded by the analysis of our sister states as articulated in *Wellman*, in reaching the conclusion that judicial ascertainment clauses are against public policy in Ohio and therefore unenforceable. Ohio values judicial economy, which protects its citizens from repeated litigation over the same matter. More importantly, the purpose of the legal system in Ohio is to provide for the resolution of legal controversies, not to be used as a mechanism to enable one party to grind down another. Accordingly Conny Farms' argument is meritorious.

### Failure to Pay Rentals & Habendum Clause

**{¶27}** Conny Farms also argues that the trial court's summary judgment was erroneous because Appellees breached the leases by failing to pay rental fees, and that the leases expired pursuant to the terms of the habendum clause. However, the trial court did not resolve these issues, granting summary judgment solely on the basis of the judicial ascertainment clause. While the trial court concluded that the leases were "valid," it did not decide whether they had been breached due to Appellees' failure to make rental payments or whether the leases had expired under their own terms pursuant to the terms of the habendum clauses. In fact, in its judgment entry denying sanctions and attorneys fees the trial court stated: "this Court's ruling on the Motion for Summary Judgment did not reach the underlying issues which were put forth by various claims in the Plaintiff's Complaint." Both parties raised these issues on summary judgment, but they were not resolved by the trial court. Thus we cannot, and must remand the case so these issues can be addressed by the trial court. *Mills-Jennings at* *99, *Ochsmann* at ¶21.

**{¶28}** In conclusion, the judicial ascertainment clauses are unenforceable as against public policy in Ohio which favors judicial economy, and preserves a legal system to promote the resolution of legal disputes rather than permit mechanisms to thwart that

system. Moreover, issues that were raised but not ruled upon by the trial court cannot be addressed by the court of appeals. Accordingly, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

Donofrio, J., concurs.

Vukovich, J., concurs.