[Cite as *Qualls v. Peregrine Health Servs.*, 2022-Ohio-4644.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Fabian L. Qualls, as Administrator of the Estate of Valarie T. Qualls, Deceased, | : | |
| | : | |
| Plaintiff-Appellant, | : | No. 21AP-473 (C.P.C. No. 20CV-3805) |
| v. | : | |
| | : | (REGULAR CALENDAR) |
| Peregrine Health Services, Inc. et al., | : | |
| | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 22, 2022

**On brief:** *Donnell & Thomas Law, LLC*, and *Titus G. Donnell*, for appellant. **Argued:** *Titus G. Donnell*.

**On brief:** *Reminger Co., L.P.A., Robert V. Kish*, and *Melvin J. Davis*, for appellees Peregrine Health Services, Inc., and Edinburgh Care Resources, LLC d/b/a Echo Manor Nursing & Rehabilitation Center. **Argued:** *Melvin J. Davis*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Fabian L. Qualls, administrator of the Estate of Valarie T. Qualls, deceased, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion for summary judgment filed by defendants-appellees Peregrine Health Services, Inc. ("Peregrine") and Edinburgh Care Resources, LLC d/b/a Echo Manor Nursing & Rehabilitation Center ("Echo Manor") (collectively, "appellees"). For the reasons which follow, we reverse and remand.

## I. Facts and Procedural History

{¶ 2} On June 12, 2020, appellant filed a complaint against Peregrine, Echo Manor, and 15 John Doe defendants alleging claims of negligence, violation of a nursing home resident's rights under R.C. 3721.13, negligent infliction of emotional distress, intentional infliction of emotional distress, assault, and battery. The complaint demonstrates that Ms. Qualls was sexually assaulted sometime in April 2018. Appellant alleged the sexual assault occurred while Ms. Qualls was a resident at Echo Manor, a long-term care facility located in Pickerington, Ohio. Appellant asserted that Peregrine owns and operates Echo Manor.

{¶ 3} On September 10, 2016, Ms. Qualls suffered a debilitating middle cerebral artery stroke which caused "severe damage to her brain." (McClary Aff. at ¶ 3; McClary Depo. at 20.) The September 2016 stroke left Ms. Qualls paralyzed on her left side and incapable of speaking or walking. Ms. Qualls' doctors recommended she be admitted to a skilled nursing facility following the stroke as she was no longer able to care for herself. Ms. Qualls' stepfather, Gerry[1] McClary, moved Ms. Qualls into Echo Manor on September 23, 2016.

{¶ 4} On March 24, 2018, Ms. Qualls was transported from Echo Manor to the Ohio State University Hospital ("OSU") due to health concerns. Doctors at OSU prescribed several antimicrobial medications, including a seven-day course of Flagyl, as treatment for a suspected meningitis infection. On April 14, 2018, Ms. Qualls was discharged from OSU and transported back to Echo Manor by the transport company Americare. On April 27, 2018, Ms. Qualls developed a high fever which persisted until April 29, 2018, when she was again transported to OSU for treatment. Testing at OSU revealed Ms. Qualls was suffering from a sexually transmitted disease ("STD") known as Trichomonas. Ms. Qualls' doctors prescribed a one-time dose of Flagyl as treatment for the STD infection.

{¶ 5} As a result of the STD diagnosis, OSU medical staff filed a report with the Ohio State University police department indicating that Ms. Qualls had been sexually assaulted. Ms. Qualls' family reported the sexual assault to the Columbus Police Department, the Fairfield County Sheriff's Office, the Ohio Attorney General's Office, and

---

[1] Although Mr. McClary's affidavit states his name is "Terry McClary," at his deposition Mr. McClary explained his name was "Gerry, with a G, McClary." (McClary Depo. at 5.)

the Ohio Department of Health. Although these various agencies investigated the matter, no suspect has been identified and no one has been criminally charged with the sexual assault of Ms. Qualls. Ms. Qualls passed away unexpectedly on December 29, 2019.

{¶ 6} On July 7, 2020, appellees filed a Civ.R. 12(B)(6) motion to dismiss the complaint. Appellees asserted the first four claims in the complaint were medical claims barred by the one-year statute of limitations in R.C. 2305.113(A). Appellees further asserted that the one-year statute of limitations in R.C. 2305.111(B) barred the remaining claims for assault and battery. Appellees argued that R.C. 2305.16 did not toll the applicable limitations period, as Ms. Qualls was not a person of unsound mind. The trial court denied appellees' motion to dismiss on August 14, 2020.

{¶ 7} Appellant filed an amended complaint on August 7, 2020. The amended complaint asserted the same claims against the same defendants as the original complaint, but specified that Ms. Qualls was suffering from "medical conditions" which caused her to be "of unsound mind * * * while in the care and custody of Echo Manor." (Am. Compl. at ¶ 13.) Appellant also attached an affidavit of merit to the amended complaint. Appellees filed an answer to the amended complaint on August 19, 2020.

{¶ 8} On March 19, 2021, appellees filed a Civ.R. 56 motion for summary judgment. Appellees asserted that, as Ms. Qualls was not exclusively present at Echo Manor during the time within which she would have contracted the STD, and as no culprit had been identified, it was "impossible to say without speculation that any additional measures, including security or additional staffing, would have prevented the alleged assault from being committed." (Mot. for Summ. Jgmt. at 2.) Appellees supported their motion for summary judgment with an affidavit from their counsel and the depositions of appellant and McClary.

{¶ 9} On July 23, 2021, appellant filed a memorandum contra the motion for summary judgment. Appellant asserted that, as Ms. Qualls was in a persistent vegetative state when her claims accrued, Ms. Qualls was a person of unsound mind and R.C. 2305.16 therefore tolled the applicable limitations period. Appellant further asserted that who had sexually assaulted Ms. Qualls and where the assault occurred were genuine issues of material fact in the case. Appellant supported the memorandum contra with affidavits from McClary and Dr. John Rocchi.

{¶ 10} Dr. Rocchi averred that the STD Trichomonas is "transmitted through sexual intercourse," and the disease has an incubation period of "4-28 days from exposure, meaning a patient will have no symptoms prior to at least four days from exposure." (Dr. Rocchi Aff. at ¶ 4.) McClary averred that, prior to Ms. Qualls death, her family was in the process of having a guardian appointed for her person and estate. McClary stated that Michael S. Witter, Psy.D., evaluated Ms. Qualls as part of the guardianship appointment process, and McClary attached the statement of expert evaluation Dr. Witter completed on November 21, 2019 to his affidavit.[2] In the statement of expert evaluation, Dr. Witter found Ms. Qualls to be mentally impaired, stated she was in a "Persistent Vegetative State – State of partial arousal rather than true awareness," had "[b]rain damage from a series of strokes and seizures in 2016," and that Ms. Qualls had "been in a vegetative state since late 2016." (McClary Aff., Ex. at 2.)

{¶ 11} The trial court issued a decision and entry granting appellees' motion for summary judgment on August 26, 2021. The court found appellant's claims for negligence, violation of R.C. 3721.13, negligent infliction of emotional distress, and intentional infliction of emotional distress to be medical claims which were barred by the one-year statute of limitations in R.C. 2305.113(A). The court determined appellant failed to establish R.C. 2305.16 tolled the limitations period, as appellant failed to produce evidence demonstrating Ms. Qualls was either adjudicated by a court as being of unsound mind or confined in an institution under a diagnosed condition which rendered her of unsound mind. The court found appellees entitled to summary judgment on appellant's assault and battery claims, as appellant had "not presented evidence which would exclude OSU or the transport company from consideration" in the sexual assault of Ms. Qualls. (Decision at 12.)

## II. Assignments of Error

{¶ 12} Appellant appeals and assigns the following two assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN ITS DECISION AND
> ENTRY GRANTING DEFENDANTS' MOTION FOR

---

[2] R.C. 2111.49(A)(1)(i) provides that a guardian's report must include a statement by a licensed physician or clinical psychologist who "has evaluated or examined the ward." The statement of expert evaluation completed by Dr. Witter is on a form from the Franklin County Probate Court which specifies that the statement "is evidence to be considered by the [Probate] Court." (McClary Aff., Ex. at 1.)

SUMMARY JUDGEMENT BY HOLDING THAT THE STATUTES OF LIMITATIONS AS TO PLAINTIFF'S CLAIMS WERE NOT TOLLED PURSUANT TO R.C. § 2305.16.

[II.] THE TRIAL COURT ERRED IN ITS DECISION AND ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF/APPELLANT'S ASSAULT AND BATTERY CLAIMS BY IMPROPERLY APPLYING THE RULES AND STANDARDS GOVERNING SUMMARY JUDGEMENT CONTAINED IN CIV.R. 56 AND RELEVANT CASE LAW.

## III. Standard of Review on Motions for Summary Judgment

{¶ 13} An appellate court reviews a grant of summary judgment under a de novo standard. *Capella III, L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6, citing *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8.

{¶ 14} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a

genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991).

## IV. First Assignment of Error – Tolling

{¶ 15}  Appellant's first assignment of error asserts the trial court erred by failing to find that R.C. 2305.16 tolled the limitations period applicable to the first four claims in the complaint.  Appellant takes no issue with the court's conclusion that the first four claims in the complaint were medical claims subject to the one-year statute of limitations in R.C. 2305.113(A).[3]  *See* R.C. 2305.113(E)(3) (defining a "[m]edical claim" for purposes of R.C. 2305.113).  Appellant also acknowledges that, absent tolling, the limitations period would have commenced in April 2018.  *See Harris v. Liston*, 86 Ohio St.3d 203, 205 (1999) (stating that generally, "a cause of action accrues at the time the wrongful act is committed"); *Akers v. Alonzo*, 65 Ohio St.3d 422, 424-25 (1992).  Accordingly, as appellant filed the complaint on June 12, 2020, the first four claims in the complaint would be barred by R.C. 2305.113(A) unless R.C. 2305.16 tolled the limitations period.

{¶ 16} R.C. 2305.16 provides, in relevant part, as follows:

> [I]f a person entitled to bring any action mentioned in [R.C. 2305.113], unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.
>
> After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so

---

[3] As appellant does not challenge the trial court's conclusion that the first four claims asserted in the complaint were medical claims, pursuant to R.C. 2305.113(E), we express no opinion regarding the trial court's conclusion on this issue. Our expression of no opinion should not be construed as affirming the trial court's conclusion that appellant's claims of negligence, violation of R.C. 3721.13, negligent infliction of emotional distress, and intentional infliction of emotional distress were medical claims under R.C. 2305.113(E). However, because appellant does not challenge the issue, for purposes of our present analysis we presume the one-year statute of limitations in R.C. 2305.113(A) applied to the first four claims asserted in the complaint without deciding the issue.

> confined shall not be computed as any part of the period within which the action must be brought.

{¶ 17} When assessing whether a person is of unsound mind for purposes of R.C. 2305.16, a court should consider whether there is " 'any evidence tending to show any species of mental deficiency or derangement from which the plaintiff was suffering which would prevent him from properly consulting with counsel, preparing and presenting his case, and attending to his affairs, and preclude him from asserting his rights in a court of justice.' " *Drake v. Grant Med. Ctr.*, 10th Dist. No. 91AP-1216 (Apr. 9, 1992), quoting *Bowman v. Lemon*, 115 Ohio St. 326, 329-30 (1926). *See Nasser v. Orthopaedic Assn. of Youngstown*, 7th Dist. No. 01-CA-123, 2002-Ohio-5208, ¶ 22 (stating that a "plaintiff who is of unsound mind at the time [the plaintiff's] cause of action accrues generally does not have the mental capability to recognize [their] cause of action or to secure counsel"). R.C. 1.02(C) generally defines "[o]f unsound mind" as including "all forms of derangement or intellectual disability." *See Fisher v. Ohio Univ.*, 63 Ohio St.3d 484, 488 (1992), citing *Webster's Third New International Dictionary* 607 (1986) (equating derangement with insanity).[4]

{¶ 18} "Upon summary judgment by the defendant, the plaintiff bears the burden of presenting evidence substantiating a claim that R.C. 2305.16 tolls the time in which the plaintiff was required to bring [their] claims against a defendant." *Boyd v. Elsamaloty*, 10th Dist. No. 15AP-533, 2015-Ohio-5578, ¶ 17, citing *Nadra v. Mbah*, 10th Dist. No. 06AP-829, 2007-Ohio-501, ¶ 36. *Accord Thomas v. Progressive Cas. Ins. Co.*, 2d Dist. No. 24519, 2011-Ohio-6712, ¶ 30. If the "evidence and pleadings do reveal a genuine issue of material fact," the "question of appellant's unsoundness of mind at the time the cause of action accrued is one for the jury and is not appropriate for summary judgment." *Almanza v. Kohlhorst*, 85 Ohio App.3d 135, 139 (3d Dist.1992). *See Bowman* at paragraph three of the syllabus (stating that whether the plaintiff was of unsound mind "should be submitted to

---

[4] In *Fisher*, the court analyzed a prior version of R.C. 1.02(C), which defined of "[u]nsound mind" as including "all forms of mental retardation or derangement." The *Fisher* court noted that former R.C. 5123.01(K) defined a " 'mentally retarded person' * * * as 'a person having significantly subaverage general intellectual functioning existing concurrently with deficiencies in adaptive behavior, manifested during the developmental period.' " *Id*. at 488, quoting former R.C. 5123.01(K). *See* R.C. 5123.01(N) (defining "[i]ntellectual disability" currently as a "disability characterized by having significantly subaverage general intellectual functioning existing concurrently with deficiencies in adaptive behavior, manifested during the developmental period").

the jury, the same as any other issue of fact in the case"); *Wells v. Bowie*, 87 Ohio App.3d 730, 734-35 (5th Dist.1993).

{¶ 19} As the plain language of R.C. 2305.16 demonstrates, the type of evidence necessary to establish whether a person was of unsound mind differs "depending upon whether it is claimed that [the person] was of unsound mind at the time the cause of action accrued or that [they] became of unsound mind after accrual of the cause of action." *Bradford v. Surgical & Med. Neurology Assocs., Inc.*, 95 Ohio App.3d 102, 106 (9th Dist.1994). *Accord Almanza* at 138 (observing that the "first paragraph of R.C. 2305.16 applies to disabilities existing at the time the cause of action accrues, while the second paragraph applies to disabilities arising after the cause of action accrues"); *Thomas* at ¶ 28. *See State ex rel. Peregrine Health Servs. of Columbus, L.L.C. v. Sears, Dir., Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-16, 2020-Ohio-3426, ¶ 29, quoting *State v. Bundy*, 4th Dist. No. 11CA818, 2012-Ohio-3934, ¶ 46 (stating that a court must " 'first look to the plain language of the statute itself to determine the legislative intent' ").

{¶ 20} If a plaintiff claims they were of unsound mind at the time the cause of action accrued, "any otherwise admissible evidence tending to support that claim may be used to establish [their] entitlement to tolling." *Bradford* at 106. *Accord Robinson v. Kramer*, 8th Dist. No. 76643 (Dec. 9, 1999) (stating that, under the first paragraph of R.C. 2305.16, the plaintiff needed to simply "present some evidence of [plaintiff's] state of mind at the time the cause of action accrued"). In *Almanza*, the court found a genuine issue of material fact regarding whether the plaintiff was of unsound mind when her cause of action accrued,[5] as the plaintiff had "suffered a severe closed head injury as a result of this accident, which left her comatose for approximately three months." *Almanza* at 138. The plaintiff in *Almanza* submitted an affidavit from her physician stating the head injury "resulted in mental, physical and emotional deficits and those deficits caused [the plaintiff] to be 'unable to care for herself and to properly look into her business affairs for at least three years subsequent to the accident.' " *Id.* at 138. *See Bowman* at 330-32 (finding evidence from the plaintiff's

---

[5] In *Almanza*, the injuries the plaintiff suffered in the motor vehicle accident which was at issue in the case "simultaneously made her of unsound mind," and the court found that such scenario implicated the first paragraph of R.C. 2305.16. *Almanza* at 138. *Accord Thomas* at ¶ 30 (holding that, when the condition which renders the plaintiff of unsound mind "occur[s] simultaneously with accrual of the cause of action," the condition of unsound mind "may be found to have existed 'at the time the cause of action accrues' for purposes of R.C. 2305.16").

physicians, neighbors, and wife describing the plaintiff's state of mind following an assault sufficient to permit "the plaintiff to go to the jury" on the issue of whether he was of unsound mind).

{¶ 21} If the plaintiff claims they became of unsound mind after the cause of action accrued, "the evidence on that issue must include either an adjudication by a court or evidence that [the plaintiff] was institutionalized or hospitalized for a condition or disease that caused her to be of unsound mind." *Bradford* at 106. *See Drake* (holding that, although testimony from the plaintiff's brother and friends demonstrated the plaintiff "may have been 'of unsound mind' at some time," as the plaintiff sought tolling under the second paragraph of R.C. 2305.16 the evidence failed to establish the plaintiff was "adjudicated as such by a court * * * or that [the plaintiff] was confined in a[n] institution or hospital for a condition which rendered [the plaintiff] 'of unsound mind' "); *Robinson* (noting the "evidentiary requirements of the second paragraph of R.C. 2305.16 are much more stringent than those of the first paragraph"); *Fisher* at 487-88.

{¶ 22} Appellant alleged that Ms. Qualls was of unsound mind at the time her cause of action accrued in 2018, as she had been in a persistent vegetative state since September 2016. As such, appellant sought tolling under the first paragraph of R.C. 2305.16. The trial court, however, stated appellant had to establish Ms. Qualls " '(1) became of unsound mind and was adjudicated as such by a court, or (2) was confined in an institution or hospital under a diagnosed condition or disease that rendered her of unsound mind.' " (Decision at 10, quoting *Boyd* at ¶ 18.) The trial court concluded appellant failed to establish either requirement.

{¶ 23} Accordingly, the trial court erred by applying the second paragraph of R.C. 2305.16, rather than the first paragraph, to the tolling issue in the present case. To determine whether the trial court's error was prejudicial, we consider whether any admissible evidence demonstrated that Ms. Qualls was suffering from a condition of mental deficiency or derangement which prevented her from properly consulting with counsel, preparing her case, and attending to her affairs at the time the claims accrued. *Drake*, quoting *Bowman* at 329-30; *Bradford* at 106. *See Gunsorek v. Pingue*, 135 Ohio App.3d 695, 701 (10th Dist.1999), quoting *State v. Payton*, 124 Ohio App.3d 552, 557 (12th Dist.1997) (holding that " 'when a trial court has stated an erroneous basis for its judgment,

an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial' ").

{¶ 24} In resolving the tolling issue, the trial court noted that the statement of expert evaluation executed by Dr. Witter was insufficient evidentiary material, as Dr. Witter had not authenticated the statement and McClary was not a custodian of the record. The court also found appellant's allegation in the amended complaint indicating that Echo Manor found Ms. Qualls to be in a persistent vegetative state insufficient, as appellees denied this allegation in their answer and the court believed appellant failed to "verify that allegation in discovery." (Decision at 10.) The court did not address any other evidence bearing on Ms. Qualls' mental state.

{¶ 25} Even if we accept the court's conclusion that Dr. Witter's statement of expert evaluation was inadmissible, and although we find potential evidentiary issues with some

of the evidence appellant relies on to support tolling,[6] we nevertheless find that other summary judgment evidence properly before the trial court sufficiently addressed Ms. Qualls' mental state at the time the claims accrued. *See Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992) (stating that Civ.R. 56(C) "imposes an absolute duty upon a trial court to read and consider all pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact when ruling on a motion for summary judgment").

---

[6] Appellant asserts that Dr. Rocchi's affidavit and the medical records attached thereto demonstrated Ms. Qualls was of unsound mind at the time the claims accrued. Dr. Rocchi averred the September 2016 stroke left Ms. Qualls "in a nearly unresponsive state," and that this "status continued through the relevant dates hereto and until her ultimate death." (Dr. Rocchi Aff. at ¶ 3.) Ms. Qualls' medical records from OSU attached to Dr. Rocchi's affidavit demonstrate that, as of April 14, 2018, Ms. Qualls' "mental status was non-verbal, minimally interactive," and that as of May 25, 2018, Ms. Qualls suffered from "neurologic dysfunction." (Dr. Rocchi Aff., Exs. B-1, B-2.) However, these medical records were not properly authenticated or admitted. *See* Evid.R. 901(B)(10) (providing for "[a]ny method of authentication or identification provided by statute"); R.C. 2317.422(A) (stating that medical records "may be qualified as authentic evidence" if the custodian of the records, person who made them, or person under whose supervision they were made, "endorses thereon the person's verified certification identifying such records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of the business of the institution"); Evid.R. 803(6) (stating that records of a regularly conducted business activity, "as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10)," will not be excluded by the hearsay rule); *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 24. Civ.R. 56(E) requires that affidavits be made on personal knowledge. Although Dr. Rocchi, who is the medical director of a nursing home in Pennsylvania, incorporated Ms. Qualls' medical records by reference into his affidavit, Dr. Rocchi did not have personal knowledge of the medical records generated at OSU. *See State ex rel. Shumway v. State Teachers Retirement Bd.*, 114 Ohio App.3d 280, 288 (10th Dist.1996). While an expert's affidavit may rely "upon facts shown by admissible evidence," the medical records attached to Dr. Rocchi's affidavit were not properly admitted. *Frederick v. Vinton Cty. Bd. of Edn.*, 4th Dist. No. 03CA579, 2004-Ohio-550, ¶ 23-24 (Internal citations omitted.). *Accord State v. Chapin*, 67 Ohio St.2d 437 (1981), paragraph two of the syllabus. Nevertheless, as no party moved to strike or objected to Dr. Rocchi's affidavit, the medical records attached to Dr. Rocchi's affidavit, or Dr. Witter's statement of expert evaluation, the court could have considered these documents in its discretion. *See State ex rel. Spencer v. E. Liverpool Planning Comm.*, 80 Ohio St.3d 297, 301 (1997), citing *Bowmer v. Dettelbach*, 109 Ohio App.3d 680, 684 (1996) (stating that a court "may consider evidence other than that listed in Civ.R. 56 when there is no objection," although "it need not do so"); *Martin v. Cent. Ohio Transit Auth.*, 70 Ohio App.3d 83, 89 (10th Dist.1990) (stating that "[i]f there is no objection [to evidentiary materials not listed in Civ.R. 56(C)], then the court in its discretion may consider the material"); *Stegawski v. Cleveland Anesthesia Group, Inc.*, 37 Ohio App.3d 78 (8th Dist.1987). Notably, the trial court did rely on Dr. Rocchi's statements pertaining to Ms. Qualls' medical history when identifying the facts of the case. (Decision at 3-4.) Similarly, although appellees improperly attempted to admit unauthenticated copies of Ms. Qualls' medical records through the affidavit of their attorney, as neither party objected to these medical records, the court could have considered the records in its discretion. *See Boyd* at ¶ 22 (stating that a "party's attempt to certify the genuineness of medical records by submitting his attorney's affidavit stating that the documents are accurate copies of the originals is insufficient"); *Sweatman v. Yellow Freight Sys., Inc.*, 10th Dist. No. 96APE03-329 (Aug. 29, 1996). The medical records appellees submitted from Ms. Qualls' March 24 to April 14, 2018 admission at OSU demonstrate that Ms. Qualls had a history of strokes and seizures, a "[c]ognitive deficit due to old cerebrovascular accident," was "unable to speak or follow commands" and she did "not have capacity for complex medical decision-making." (Mot. for Summ. Jgmt., Ex. A-1.)

{¶ 26} Appellant alleged in the amended complaint that Ms. Qualls was suffering from "mental conditions" which caused her to be "of unsound mind" while at Echo Manor, and that Echo Manor had evaluated Ms. Qualls and found her to be "in a 'persistent vegetative state.' " (Am. Compl. at ¶ 13, 53.) "Pleadings" are specifically identified in Civ.R. 56(C) as proper summary judgment material. *See State ex rel. Spencer v. E. Liverpool Planning Comm.*, 80 Ohio St.3d 297, 298 (1997) (stating that pursuant to Civ.R. 56(C) "[s]worn pleadings constitute evidence for purposes of Civ.R. 56"); *Dombelek v. Admr., Bur. of Workers' Comp.*, 154 Ohio App.3d 338, 2003-Ohio-5151, ¶ 17 (7th Dist.). McClary averred in his affidavit that he moved Ms. Qualls into Echo Manor and that Echo Manor "performed various evaluations of [Ms. Qualls] and they determined that she was in a 'persistent vegetative state.' " (McClary Aff. at ¶ 4.) McClary further averred that the stroke Ms. Qualls suffered in September 2016 rendered her incapable of "speaking, walking and extremely limited her ability to interact with others in the room." (McClary Aff. at ¶ 3.)

{¶ 27} McClary explained in his deposition that, following the September 2016 stroke, Ms. Qualls' speech was "incoherent," she did not "understand what was going on," and did not react consistently when spoken to. (McClary Depo. at 18-20.) McClary, who visited Ms. Qualls often, stated that her condition remained "[t]he same" from September 2016 through 2018. (McClary Depo. at 21.) Appellant, Ms. Qualls' brother, indicated he did not believe Ms. Qualls "knew what was going on" when she arrived at Echo Manor in September 2016. (Appellant Depo. at 8.) Appellant visited Ms. Qualls two or three times while she was at Echo Manor, and affirmed that Ms. Qualls' mental condition remained the same from the time she was admitted to the facility through April 2018.

{¶ 28} Appellees incorporated the arguments set forth in their motion to dismiss into their motion for summary judgment. In their motion to dismiss, appellees argued Ms. Qualls was not of unsound mind for purposes of R.C. 2305.16, because the complaint alleged she had experienced pain and suffering, emotional distress, and fear. Appellees did not present any additional evidence to support their contention that Ms. Qualls was of sound mind. *See* Civ.R. 56(C) and (E). A person's mere ability to experience sensations or emotions fails to establish that such person has the mental capacity to consult with counsel, prepare their case, or otherwise attend to their affairs. *See Drake*, quoting *Bowman* at 329-30.

{¶ 29} Viewing the evidence in a light most favorable to appellant, the evidence demonstrates a genuine issue of material fact regarding whether Ms. Qualls was of unsound mind at the time the claims accrued. As such, the limitations period applicable to the first four claims in the complaint was potentially tolled by R.C. 2305.16. The trial court therefore erred by granting appellees summary judgment based on the statute of limitations bar. As the trial court did not address the merits of appellant's first four claims, we will not do so in the first instance on appeal. *See Ochsmann v. Great Am. Ins. Co.*, 10th Dist. No. 02AP-1265, 2003-Ohio-4679, ¶ 21, citing *Mills-Jennings, Inc. v. Dept. of Liquor Control*, 70 Ohio St.2d 95, 99 (1982) (holding it is "well-established that questions not considered by a trial court will not be ruled upon by [the appellate] court"); *Min You v. N.E. Ohio Med. Univ.*, 10th Dist. No. 19AP-733, 2020-Ohio-4661, ¶ 31.

{¶ 30} Based on the foregoing, we sustain appellant's first assignment of error.

## V. Second Assignment of Error – Assault & Battery Claims

{¶ 31} Appellant's second assignment of error asserts the trial court failed to properly apply the rules and standards governing summary judgment when ruling on the assault and battery claims. In tort, an assault is "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406 (10th Dist.1993). *Accord Bauman v. Bob Evans Farms, Inc.*, 10th Dist. No. 06AP-737, 2007-Ohio-145, ¶ 18, fn. 3. To establish the tort of battery, a plaintiff "must demonstrate that the defendant acted intending to cause a harmful or offensive contact and, in fact, a harmful contact resulted." *McRae v. Icon Entertainment Group, Inc.*, 10th Dist. No. 08AP-820, 2009-Ohio-5119, ¶ 8, citing *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (1988). *Accord Stafford v. Clever Investigations, Inc.*, 10th Dist. No. 06AP-1204, 2007-Ohio-5086, ¶ 9.

{¶ 32} Appellant's assault claim alleged that "John Does 1 - 15 intentionally, without consent or authority, engaged in sexual intercourse with Ms. Qualls," and reasonably placed Ms. Qualls in fear of such offensive contact. (Am. Compl. at ¶ 99-101.) Appellant's battery claim alleged that "John Does 1 - 15 intended to cause," and caused "a harmful and/or offensive contact with Ms. Qualls when forcing her to engage in sexual intercourse." (Am. Compl. at ¶ 104-05.) Appellant identified John Does 1 through 5 as employees or agents of Echo Manor, John Does 6 through 10 as residents of Echo Manor, and John Does 11

through 15 as unknown individuals who had contact with Ms. Qualls at Echo Manor. Appellant alleged he would amend the complaint "[w]hen the true names and identity of said Defendants John Does 1 through 15 have been ascertained," but appellant never identified any of the John Doe defendants. (Am. Compl. at ¶ 12.) Furthermore, while appellant alleged that Peregrine and Echo Manor were "vicariously liable for the negligent actions of their employees [and/or] agents," appellant did not allege that appellees were vicariously liable for intentional torts committed by their employees or agents. (Am. Compl. at ¶ 43.)

{¶ 33} In moving for summary judgment, appellees argued the assault and battery claims were time barred by R.C. 2305.111. The trial court concluded that, while the assault and battery claims were not barred by the applicable statute of limitations,[7] the evidence failed to demonstrate a genuine issue of material fact with respect to the claims. The court noted that Ms. Qualls was not exclusively present at Echo Manor during the 24-day period within which she would have contracted the STD, as she had also been at OSU and in the transport vehicle during the relevant time span. As appellant had not produced evidence excluding OSU or the transport vehicle as potential places where the assault occurred, the court found appellees entitled to summary judgment on appellant's assault and battery claims.

{¶ 34} Although appellant contends the trial court erred in its summary judgment analysis, we note a more fundamental problem with the court's ruling on the assault and battery claims. Echo Manor and Peregrine sought summary judgment on the assault and battery claims, but appellant filed the assault and battery claims solely against the 15 John

---

[7] An action for assault or battery generally accrues on the "date on which the alleged assault or battery occurred." R.C. 2305.111(B)(1). However, if the plaintiff does not know the identity of the assailant, the claim accrues either on the "date on which the plaintiff learns the identity of that person" or the "date on which, by the exercise of reasonable diligence, the plaintiff should have learned the identity of that person." R.C. 2305.111(B)(2)(a). The trial court acknowledged that appellant did not know the identity of the alleged assailant and stated, in response to the question of "when should [appellant] have learned the identity," that the court could not "determine when the statute of limitations began to run on the assault and battery claims." (Decision at 11.) Although the court stated the assault and battery claims were "not time barred," the court's findings arguably demonstrate that the assault and battery claims have yet to accrue. (Decision at 11.) *See Tabbaa v. Nouraldin*, 8th Dist. No. 110737, 2022-Ohio-1172, ¶ 26 (stating that, as there was not "sufficient information in the record to make a determination as to whether this cause of action has accrued and, if so, when it accrued," the trial court "erred in granting summary judgment on that claim without sufficient evidence to make such a determination").

Doe defendants.[8]   As the assault and battery claims were not alleged against Echo Manor or Peregrine, the trial court could not grant appellees summary judgment as to these claims. *Compare Byers v. Robinson*, 10th Dist. No. 08AP-204, 2008-Ohio-4833, ¶ 36-37. Accordingly, we find the trial court erred by granting appellees summary judgment on the assault and battery claims, albeit for different reasons than those asserted by appellant.

{¶ 35} Based on the foregoing, we sustain appellant's second assignment of error.

## VI. Conclusion

{¶ 36} Having sustained appellant's first and second assignments of error, the judgment of the Franklin County Court of Common Pleas is reversed and this case is remanded to that court for further proceedings consistent with law and this decision.

*Judgment reversed, cause remanded.*

LUPER SCHUSTER, P.J., and SADLER, J., concur.

---

[8] There is no indication in the record that appellant effectuated personal service on any of the John Doe defendants. *See* Civ.R. 15(D).