[Cite as *Adkins v. MedCentral Health Sys. Mansfield Hosp.*, 2024-Ohio-2822.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Mary Adkins, Guardian of the Person and Estate of Henry Dean Adkins, Sr., | : | |
| | : | |
| Plaintiff-Appellant, | | No. 23AP-603 |
| | : | (C.P.C. No. 21CV-1018) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| MedCentral Health System - Mansfield Hospital et al., | : | |
| | | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on July 25, 2024

**On brief:** *Paul Knott*, for appellant. **Argued:** *Paul Knott*.

**On brief:** *Freeman Mathis & Gary, LLP, Kevin M. Norchi, Brendan M. Richard*, and *Spencer M. Sukel*, for appellees Anthony Khoury, D.O. and Paul E. Ritenour, D.O. **Argued:** *Kevin M. Norchi*.

**On brief:** *Reminger Co., L.P.A., Robert V. Kish*, and *Kenton H. Steele*, for appellee Chandravadan Patel, M.D. **Argued:** *Kenton H. Steele*.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Plaintiff-appellant, Mary Adkins, as guardian of the person and estate of Henry Dean Adkins, Sr., appeals from a judgment of the Franklin County Court of Common Pleas granting the motions for summary judgment filed by defendants-appellees, Anthony Khoury, D.O., Paul E. Ritenour, D.O., and Chandravadan Patel, M.D. For the reasons which follow, we reverse.

## I. Facts and Procedural History

{¶ 2} On February 18, 2021, Mary filed a complaint asserting claims of medical negligence against appellees. The complaint alleged that, on September 28, 2011, Henry was struck by a motor vehicle and sustained injury. From October 4 through October 12, 2011, Henry was under the care and treatment of MedCentral Health System – Mansfield Hospital ("MedCentral") by and through its employees, Drs. Khoury, Ritenour, and Patel. The complaint alleged that due to appellees' negligent care and treatment, Henry sustained severe and permanent injuries including, but not limited, to a catastrophic brain injury. The present case is the third action initiated by either Mary or Henry asserting claims of medical negligence against appellees.

{¶ 3} In the month following the September 28, 2011 motor vehicle accident Henry experienced significant changes to his demeanor, behavior, and mental state. By October 30, 2011, Henry's condition had "declined to the point that he lost the ability to speak, had great difficulty ambulating and was unable to even dress or bathe himself." (Brief in Opp. to Summ. Jgmt., Ex. 2 "Mary Affidavit" at ¶ 8.) On October 30, 2011, Mary, who had been Henry's live-in girlfriend since 2006, took Henry to the Department of Veterans Affairs Medical Center (the "VA hospital") in Cleveland, Ohio. The VA hospital performed a CT scan of Henry's brain and discovered a "large left-sided subdural hematoma containing blood products of differing ages" and a midline shift of the brain "to the right by approximately 16 mm." (Brief in Opp. to Summ. Jgmt., Ex. 5.) Henry underwent emergency surgery to evacuate the subdural hematoma.

{¶ 4} On April 9, 2013, Henry, through counsel, filed an action in his individual capacity against appellees alleging claims of medical negligence, *Adkins v. MedCentral Health Sys.*, Franklin C.P. No. 13CV-3912 ("*Adkins I*"). On January 15, 2014, the Richland County Probate Court ("probate court") appointed Mary the guardian of Henry's person. In June 2014, Mary and Henry petitioned the probate court pro se to permit them to marry. The probate court issued an order in Richland Prob. case No. 2013 2075 granting their request on June 24, 2014 stating that the guardianship of Henry's person would terminate "as a matter of law upon the solemnization of the wedding ceremony." (Brief in Opp. to Summ. Jgmt., Ex. 14.) Mary and Henry married on August 8, 2014.

**{¶ 5}** On February 18, 2016, Mary voluntarily dismissed *Adkins I* without prejudice. On February 17, 2017, Mary refiled the complaint for medical negligence against appellees, alleging she was Henry's guardian, *Bigler, Grdn. v. MedCentral Health Sys.*, Franklin C.P. No. 17CV-1782 ("*Adkins II*"). Appellees filed motions for summary judgment in *Adkins II* asserting Mary lacked standing to bring the action. The trial court granted appellees' motions for summary judgment on September 19, 2018.

**{¶ 6}** On October 12, 2018, the probate court issued an entry purporting to correct a clerical omission, nunc pro tunc, in its January 15, 2014 judgment entry appointing Mary the guardian of Henry's person. The probate court stated that its January 15, 2014 entry was amended to reflect that, at the time of the appointment, Mary was authorized to pursue Henry's "personal injury actions, including the claims and causes of action that were originally set forth and pending" in *Adkins I*. (Brief in Opp. to Summ. Jgmt., Ex. 7 at 2.) The probate court also vacated its June 24, 2014 entry dismissing the guardianship and denied Mary's application for appointment as the guardian of Henry's estate.

**{¶ 7}** Following the October 12, 2018 entry, Mary moved the court in *Adkins II* to reconsider its summary judgment ruling. The trial court granted Mary's motion for reconsideration. On February 20, 2020, however, the trial court again granted appellees' motions for summary judgment. The trial court determined the probate court's October 12, 2018 order was an "attempt to 'seiz[e] the outcome of this case,' " and that Mary lacked standing to bring *Adkins II*. (Mot. for Jgmt. on the Pleadings, Ex. E at 7.)

**{¶ 8}** On January 24, 2021, the probate court issued an order appointing Mary the guardian of Henry's person and estate. The probate court stated in the order that Henry was "and has been continually incompetent by reason of a traumatic brain injury that occurred on September 28, 2011 and therefore is and since such time has been incapable of taking proper care of [x] self and [x] property." (Brief in Opp. to Summ. Jgmt., Ex. 16.)

**{¶ 9}** Mary filed the present action, *Adkins v. MedCentral Health Sys.*, Franklin C.P. No. 21CV-1018 ("*Adkins III*"), in her capacity as guardian of Henry's person and estate. The present complaint alleges that the applicable statutes of limitations and repose were "tolled" due to Henry's "continuing incompetence." (Compl. at ¶ 4.) Neither the complaint in *Adkins I* nor *II* alleged that Henry's incompetence tolled the statutes of limitations or repose.

{¶ 10} On October 27, 2022, appellees each filed Civ.R. 56 motions for summary judgment asserting the complaint in *Adkins III* was time barred. Appellees noted that Henry retained counsel, signed medical releases, and filed *Adkins I* in his individual capacity after his claims accrued. Appellees also noted the probate court granted Mary and Henry permission to marry in 2014. As such, appellees argued that Mary could not establish R.C. 2305.16 tolled the applicable limitations period because Henry was not of unsound mind when the claims accrued. Appellees relied on the following documents to support their motions for summary judgment: August 1, 2012 and June 5, 2013 letters from Attorney Paul Knott to MedCentral stating that Knott represented Henry;[1] August 1, 2012 and June 5, 2013 authorizations to disclose health information initialed by Henry; October 11, 2012 letters from Attorney Knott to Drs. Patel and Ritenour stating that Knott represented Henry and that Henry was considering bringing legal action; and the June 24, 2014 probate court entry permitting Mary and Henry to marry.

{¶ 11} On November 23, 2022, Mary filed a combined brief in opposition to appellees' motions for summary judgment, asserting R.C. 2305.16 tolled the statutes of limitations and repose. Mary argued the probate court's January 24, 2021 entry conclusively established Henry had been incompetent since the September 28, 2011 motor vehicle accident. Mary further argued that additional evidence established Henry had been of unsound mind since the cause of action accrued. Mary submitted Henry's certified medical records from 2011; the affidavit and expert report of Robert P. Granacher, Jr., M.D.; her own affidavit; the January 24, 2021 probate court entry; the probate court's docket; statements of expert evaluations submitted to the probate court in 2013, 2016,

---

[1] Under Civ.R. 56(C), only "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact" are permitted to support a motion for summary judgment. " 'The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit.' " *Martinez v. Yoho's Fast Food Equip.*, 10th Dist. No. 02AP-79, 2002-Ohio-6756, ¶ 46, quoting *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220, 222 (8th Dist.1986). In the present case, all parties submitted documents during the summary judgment proceedings which were not specifically authorized by Civ.R. 56(C) or incorporated by reference in a properly framed affidavit. However, "[c]ourts may consider other forms of evidence than those specified in Civ.R. 56(C) if there is no objection to the evidence." *Open Container, Ltd. v. CB Richard Ellis, Inc.*, 10th Dist. No. 14AP-133, 2015-Ohio-85, ¶ 11, citing *State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 122 Ohio St.3d 260, 2009-Ohio-2871, ¶ 17. *Accord Bradley v. Ohio Dept. of Transp.*, 10th Dist. No. 13AP-918, 2014-Ohio-3205, ¶ 21. Because neither party objected to the summary judgment evidence presented, the trial court could properly consider the evidence.

2018, and 2020; and several depositions, including the depositions of appellees and Dr. Granacher, to support her brief in opposition to summary judgment.

{¶ 12} On September 7, 2023, the trial court issued a decision and entry granting appellees' motions for summary judgment. The court noted that, while R.C. 2305.16 tolled the statute of limitations and statute of repose for persons who were "of unsound mind," Mary failed to establish that Henry was of unsound mind. (Decision at 7, 16.) The trial court stated it would "not consider the January 24, 2021 judgment entry dispositive on the issue of unsound mind," because the probate court's 2021 entry was "inconsisten[t]" with that court's 2014 entries appointing guardian and "[finding Henry] competent enough to marry his guardian." (Decision at 14.) The trial court concluded appellees' summary judgment evidence established Henry "consulted counsel at least in the first lawsuit" and "implie[d] that counsel was able to consult with [Henry] before bringing the first complaint." (Decision at 15-16.) As such, the trial court determined that R.C. 2305.16 did not toll the applicable statutes of limitations or repose and that Mary had filed the complaint in *Adkins III* far beyond the time allowed by R.C. 2305.113.

## II. Assignments of Error

{¶ 13} Mary appeals and assigns the following two assignments of error for our review:

> I. The Richmond County Probate Court's Adjudication that Mr. Adkins "is and has been Continuously Incompetent by Reason of a Traumatic Brain Injury that Occurred on September 28, 2011" is Conclusive Evidence that Mr. Adkins was of "Unsound Mind" at the time the Cause of Action Accrued and that the Statute of Limitations and Statute of Repose are Tolled.
>
> II. Construing the Record and all inferences in Mrs. Adkins Favor, Genuine Issues of Material Fact Exist Upon which Reasonable Minds could Conclude that Mr. Adkins was of Unsound Mind before the Cause of Action Accrued and Continuously through the Present, thereby Tolling both the Statute of Limitations and the Statute of Repose.

## III. Analysis

{¶ 14} Mary's assignments of error collectively assert that, because R.C. 2305.16 tolled the applicable statutes of limitations and repose, the trial court erred by granting

appellees' motions for summary judgment. For ease of analysis, we address Mary's assignments of error jointly.

{¶ 15} An appellate court reviews a grant of summary judgment under a de novo standard. *Capella III, L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6, citing *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8. *Accord Norris v. Ohio Std. Oil Co.*, 70 Ohio St.2d 1, 2 (1982), quoting *Vetovitz Bros., Inc. v. Kenny Constr. Co.*, 60 Ohio App.2d 331, 332 (9th Dist.1978) (stating that because " '[s]ummary judgment is a procedural device to terminate litigation,' " it must be " 'awarded with caution, resolving doubts and construing evidence against the moving party' ").

{¶ 16} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 17} R.C. 2305.113 provides that, except as otherwise provided in the section, "an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued," and that "[n]o action upon a medical * * * claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim." R.C. 2305.113(A) and (C)(1). Thus, R.C. 2305.113 sets forth a one-year statute of limitations and a four-year statute of repose for medical claims.

{¶ 18} Mary contends that Henry's cause of action against appellees accrued on October 30, 2011 when the VA hospital performed a CT scan of Henry's brain and discovered the subdural hematoma. Appellees contend the cause of action accrued when Henry's relationship with each doctor terminated, on October 8, 2011 for Drs. Khoury and Patel, and October 12, 2011 for Dr. Ritenour. *See Akers v. Alonzo*, 65 Ohio St.3d 422, 424-25 (1992) (stating that a cause of action for medical negligence accrues either when "the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury," or "when the physician-patient relationship for the condition terminates, whichever occurs later"). Accordingly, the parties generally agree that Henry's medical negligence claims accrued sometime in October 2011. Pursuant to R.C. 2305.113, Henry or Mary had to commence the medical claims by October 2012, and could not commence the claims after October 2015.

{¶ 19} R.C. 2305.16, however, tolls the statutes of limitations and repose in certain instances, providing as follows:

> Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.
>
> After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so

confined shall not be computed as any part of the period within which the action must be brought.

{¶ 20} Thus, the "first paragraph of R.C. 2305.16 applies to disabilities existing at the time the cause of action accrues, while the second paragraph applies to disabilities arising after the cause of action accrues." *Almanza v. Kohlhorst*, 85 Ohio App.3d 135, 138 (3d Dist.1992). *See also Thomas v. Progressive Cas. Ins. Co.*, 2d Dist. No. 24519, 2011-Ohio-6712, ¶ 28; *Al-Mosawi v. Plummer*, 2d Dist. No. 24985, 2012-Ohio-6034, ¶ 18. Mary contends the first paragraph of R.C. 2305.16 applies to the present case, because Henry has continuously been of unsound mind since the medical negligence claims accrued. The first paragraph of R.C. 2305.16 tolls the limitations period from the date of accrual until "after the disability is removed."

{¶ 21} Throughout the present case, former R.C. 1.02(C) has defined "[o]f unsound mind" as including "all forms of derangement or intellectual disability." *See Fisher v. Ohio Univ.*, 63 Ohio St.3d 484, 488 (1992), citing *Webster's Third New International Dictionary* 607 (1986) (noting that derangement "has been equated with insanity"); R.C. 5123.01(N) (defining "[i]ntellectual disability" for purposes of R.C. Chapter 5123). Effective April 3, 2023, R.C. 1.02(C) now defines "[o]f unsound mind" as "lack[ing] the relevant mental capacity." *See* 2022 H.B. No. 281.

{¶ 22} When assessing whether a person is of unsound mind for purposes of R.C. 2305.16, courts consider whether there is "any evidence tending to show any species of mental deficiency or derangement from which the plaintiff was suffering which would prevent him from properly consulting with counsel, preparing and presenting his case, and attending to his affairs, and preclude him from asserting his rights in a court of justice." *Bowman v. Lemon*, 115 Ohio St. 326, 329-30 (1926). *See Qualls v. Peregrine Health Servs., Inc.*, 10th Dist. No. 21AP-473, 2022-Ohio-4644, ¶ 17 (relying on this language from *Bowman*); *Drake v. Grant Med. Ctr.*, 10th Dist. No. 91AP-1216 (Apr. 9, 1992) (same). A plaintiff who is of unsound mind at the time their cause of action accrues "generally does not have the mental capability to recognize [their] cause of action or to secure counsel." *Nasser v. Orthopaedic Assn. of Youngstown*, 7th Dist. No. 01-CA-123, 2002-Ohio-5208, ¶ 22.

{¶ 23} "Upon summary judgment by the defendant, the plaintiff bears the burden of presenting evidence substantiating a claim that R.C. 2305.16 tolls the time in which the plaintiff was required to bring [their] claims against a defendant." *Boyd v. Elsamaloty*, 10th Dist. No. 15AP-533, 2015-Ohio-5578, ¶ 17, citing *Nadra v. Mbah*, 10th Dist. No. 06AP-829, 2007-Ohio-501, ¶ 36. If the "evidence and pleadings do reveal a genuine issue of material fact," the "question of appellant's unsoundness of mind at the time the cause of action accrued is one for the jury and is not appropriate for summary judgment." *Almanza* at 139. *See Bowman* at paragraph three of the syllabus (noting the "plaintiff has the burden" to prove they were "of unsound mind at the time a cause of action accrues," and that the issue "should be submitted to the jury, the same as any other issue of fact in the case").

{¶ 24} Where a plaintiff claims they were of unsound mind at the time the cause of action accrued under the first paragraph of R.C. 2305.16, "any otherwise admissible evidence tending to support that claim may be used to establish [their] entitlement to tolling." *Bradford v. Surgical & Med. Neurology Assocs., Inc.*, 95 Ohio App.3d 102, 106 (9th Dist.1994). Accordingly, a plaintiff must simply "present some evidence of [their] state of mind at the time the cause of action accrued in order to satisfy the first paragraph" of R.C. 2305.16. *Robinson v. Kramer*, 8th Dist. No. 76643 (Dec. 9, 1999) (observing that the "evidentiary requirements of the second paragraph of R.C. 2305.16 are much more stringent than those of the first paragraph"). *See Qualls* ¶ 26-27 (finding testimony from the injured party's stepfather and brother describing her mental state during the relevant time frame sufficient to demonstrate a genuine issue of material fact regarding whether she was of unsound mind under the first paragraph of R.C. 2305.16); *Bowman* at 330-32 (finding evidence from the plaintiff's physicians, neighbors, and wife describing the plaintiff's state of mind following an assault sufficient to permit "the plaintiff to go to the jury" on the issue of whether he was of unsound mind).

{¶ 25} Mary's first assignment of error asserts the probate court's January 24, 2021 judgment entry was conclusive evidence establishing that Henry was of unsound mind at the time the cause of action accrued. The January 24, 2021 entry stated that Henry had been "continuously incompetent" since the September 28, 2011 motor vehicle accident. (Brief in Opp. to Summ. Jgmt., Ex. 16.) Appellees contend the 2021 entry did not

conclusively establish that Henry was of unsound mind, because the standard for determining incompetency in the probate court differs from the standard for determining whether an individual is of unsound mind for purposes of R.C. 2305.16.

{¶ 26} R.C. 2111.02 authorizes a probate court, after holding a hearing on the matter, to appoint a "guardian of the person, the estate, or both, of a minor or incompetent." R.C. 2111.02(A) and (C). *See State ex rel. McQueen v. Cuyahoga Cty. Court of Common Pleas, Probate Div.*, 135 Ohio St.3d 291, 2013-Ohio-65, ¶ 10, citing R.C. 2111.02(A) (stating that the "General Assembly has empowered probate courts to appoint a guardian of an incompetent person"). R.C. 2111.01(D)(1) defines an "[i]ncompetent" individual as a person who "is so mentally impaired, as a result of a mental or physical illness or disability, as a result of intellectual disability, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property." *See also* R.C. 2111.01(B) (defining a "[w]ard" as "any person for whom a guardian is acting").

{¶ 27} Because a probate court's finding of incompetency addresses the injured party's mental state, it may be relevant to the unsound mind question. *Robinson.* However, a person could potentially suffer from a mental impairment which renders them incompetent, pursuant to R.C. 2111.01(D), but which does not prevent them from properly consulting with counsel or preparing and presenting their case pursuant to the *Bowman* standard for unsound mind. As such, a finding of incompetency is not dispositive, on its own, of the unsound mind issue. *Compare State v. Burns*, 12th Dist. No. CA2004-07-084, 2005-Ohio-5290, ¶ 48 (holding that the fact "a person is found incompetent in [probate court] pursuant to R.C. 2111.02, may be relevant to the question of whether that person is [competent to stand trial], however, it is not dispositive on that issue"); *State v. Calabrese,* 8th Dist. No. 104151, 2017-Ohio-7316, ¶ 18. Additional facts beyond the finding of incompetency will be necessary to assess whether the incompetent individual is of unsound mind.

{¶ 28} For instance, in *Martinez v. Yoho's Fast Food Equip.*, 10th Dist. No. 02AP-79, 2002-Ohio-6756, the plaintiff presented "medical documentation" regarding the "cognitive deficits" the injured party suffered as a result of a "traumatic closed head injury," and evidence that "a Michigan probate court" appointed "Elena Martinez to be full guardian because of [the injured party's] 'mental illness' and 'physical illness or disability.' " *Id.* at

¶ 50-51. The medical documentation in conjunction with the appointment of a guardian demonstrated that the injured party was "of unsound mind * * *, thereby tolling the statute of limitations under former R.C. 2305.16." *Id*. at ¶ 51. *See also Lowe v. Union Trust Co.*, 124 Ohio St. 302 (1931) (noting that "the appointment of a guardian during the proceedings" and the "uncontroverted testimony of Mrs. Schnopp's attorneys" addressing her mental state, was sufficient to establish "that [Mrs. Schnopp] was of unsound mind").

**{¶ 29}** The trial court refused to consider the January 24, 2021 entry because it found the entry inconsistent with the probate court's 2014 entries appointing a guardian and permitting Mary and Henry to marry. Appellees assert the trial court properly rejected the probate court's 2021 entry, because the 2021 entry back-dated Henry's incompetency to 2011 and arose from a non-adversarial proceeding where hearsay was admissible. (Appellee Patel's Brief at 21, 26-27; Appellees Khoury's & Ritenour's Brief at 21-23.) *See In re Guardianship & Conservatorship of Stancin*, 10th Dist. No. 02AP-637, 2003-Ohio-1106, ¶ 13 (stating that "hearings regarding the appointment of a guardian are non-adversarial special statutory proceedings" and "the hearsay rules are 'clearly inapplicable' to guardianship proceedings").

**{¶ 30}** Appellees' and the trial court's criticisms of the January 24, 2021 entry are appropriate considerations for the trier of fact determining the weight to accord this piece of evidence. Courts, however, "may not weigh the evidence or consider the credibility of witnesses in ruling upon a motion for summary judgment." *Nationwide Mut. Ins. Co. v. Am. Elec. Power*, 10th Dist. No. 08AP-339, 2008-Ohio-5618, ¶ 29, citing *Santho v. Boy Scouts of Am.*, 168 Ohio App.3d 27, 2006-Ohio-3656, ¶ 16. At the summary judgment stage of the proceedings, the trial court was required to resolve all doubts and construe the January 24, 2021 entry in Mary's favor. *Premiere Radio Networks, Inc.*, 2019-Ohio-4015, ¶ 6. Moreover, appellees have not directed this court to any authority which would prevent a probate court from finding that a ward's incompetency began at some point prior to the application for guardianship. *Compare Boyd*, 2015-Ohio-5578, ¶ 19 (noting that, because the doctor only found the patient to be "incompetent as of the date of evaluation," the evidence "submitted to the probate court [did] not indicate that the incompetency finding related to any period prior to the probate court's order").

{¶ 31} Accordingly, while a probate court's finding of incompetency may support a claim of unsound mind, a finding of incompetency does not conclusively establish that the incompetent individual was of unsound mind. The nature of the individual's mental impairment and its impact on their ability to properly consult with counsel remain factual issues. Because Mary's first assignment of error asserts that the January 24, 2021 order conclusively established Henry was of unsound mind, we overrule the first assignment of error. *See* App.R. 12(A)(1)(b) (stating the appellate court must "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs"); *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (holding that appellate courts "rule[] on assignments of error only").

{¶ 32} Mary's second assignment of error asserts that, construing all the summary judgment evidence in her favor, the evidence presents genuine issues of material fact regarding whether Henry has continuously been of unsound mind since the claims accrued. The trial court concluded that appellees' summary judgment evidence, including the letters from Attorney Knott and the medical releases initialed by Henry in 2012 and 2013, demonstrated that Henry consulted with counsel and "implie[d]" that counsel was able to consult with Henry at that time. (Decision at 16.) The trial court therefore concluded Henry was not of unsound mind in 2012 or 2013 pursuant to the *Bowman* standard.

{¶ 33} The trial court failed to view appellees' summary judgment evidence in a light most favorable to the non-moving party. The 2012 and 2013 letters and releases do not address Henry's mental state or demonstrate that Henry had the ability to properly consult with counsel at that time. Notably, Dr. Patel presented medical records from Henry's December 24, 2011 admission to MedCentral in support of his motion for summary judgment, which demonstrate that Henry's family was communicating with Attorney Knott, Henry did not recognize Attorney Knott without Mary's assistance, Mary told hospital staff she always signed Henry's consent, and a doctor concluded Henry was not competent to sign paperwork at that time.

{¶ 34} The December 24, 2011 medical records note that Henry was "very aphasic (as per previous stroke)," Henry's "family members [had] even called a lawyer who [was] now involved," and that Attorney Knott was present at the hospital with Henry and Mary. (Mot. for Summ. Jgmt., Ex. I at 4, 10.) *See Merriam-Webster's Collegiate Dictionary* 57

(11th Ed.2014) (defining "aphasia" as the "loss or impairment of the power to use or comprehend words usu. resulting from brain damage"). The medical records demonstrate that a nurse asked Henry if he knew Attorney Knott, and Henry "initially looked confused [and] shook head 'no.' Fiancé[e] then said, 'yes, you know him remember...' Then [Henry] agreed he knew him." (Ex. I at 14.) Another nursing note indicates Henry was refusing to sign paperwork, Mary told the nurse she "always sign[ed] his consent," and that the nurse explained to Mary she "needed power of attorney to allow her to sign." (Ex. I at 15.) The nursing note further states "Mary is working [with] attorney to get POA." (Ex. I at 16.) Henry's family informed the nursing staff that Henry was "not competent to sign for himself in this condition," and a doctor subsequently determined Henry was "not competent to make decision to sign transfer paper." (Ex. I at 18.) Viewing this evidence in a light most favorable to Mary, reasonable minds could conclude that Henry did not have the ability to properly consult with counsel during the relevant time frame.

{¶ 35} Moreover, the fact that Attorney Knott represented Henry in 2012 and 2013 did not establish that Henry was of sound mind at that time. In *Wells v. Bowie*, 87 Ohio App.3d 730 (5th Dist.1993), the trial court concluded the appellant "was not of unsound mind because she sought legal counsel in another matter during the time of her claimed derangement." *Id*. at 734. The reviewing court reversed, noting the trial court failed to view "the evidence in the light most favorable to [the] appellant," because reasonable minds could still find that the appellant "was of unsound mind" during the time she sought legal counsel. *Id*. at 734-35. *See also Smith v. Grumman-Olsen Corp.*, 913 F.Supp. 1077, 1086 (E.D. Tenn.1995) (holding that evidence demonstrating the injured party "hired the law firm of Jenkins and Bradshaw to represent him" and that he "allegedly signed the pleading for the workman's compensation suit" did not establish, at the summary judgment stage of the proceeding, that the injured party was of sound mind); *Bowman*, 115 Ohio St. at 331 (noting the fact the "plaintiff testified before the grand jury, relating the circumstances of the assault," during the same period he claimed to be of unsound mind, "did not take away his right to go to the jury" on the issue of unsound mind).

{¶ 36} Although Dr. Patel contends that *Wells* is distinguishable from the present case because the plaintiff in *Wells* sought counsel in a different legal proceeding, we find that factual distinction insignificant. (Appellee Patel's Brief at 32.) An individual's

retention of counsel, whether in the case at issue or in a different case, does not conclusively establish that the individual was of sound mind. The trier of fact may, however, properly consider the fact that an individual retained counsel when resolving the unsound mind issue.

**{¶ 37}** The trial court also relied on the fact that the probate court "found [Henry] competent enough to marry" in June 2014 to conclude that Henry was not of unsound mind at that time. (Decision at 14.) However, there is nothing in the probate court's June 24, 2014 order that expressly addresses Henry's competency. The June 24, 2014 order states that the matter came before the probate court "upon the request of the ward and fiancé[e] to permit him to marry," and that the probate court instructed its investigators "to examine the circumstances surrounding the request." (Brief in Opp. to Summ. Jgmt., Ex. 14.) The order further states the investigators "made contact with the ward and guardian as well as other family members who [were] in favor of the proposed marriage," and that the probate court, "upon due consideration grant[ed] the guardian, Mary * * * authority to marry the ward, Henry." (Ex. 14.) *See* R.C. 2111.45 (providing that the "marriage of a ward shall terminate the guardianship as to the person, but not as to the estate, of the ward").

**{¶ 38}** "[A] mentally ill person who has an appointed guardian can still enter into a valid marriage, provided he or she 'fully comprehends the nature and consequences of his or her act in getting married.' " *Boyd v. Edwards*, 4 Ohio App.3d 142, 148 (8th Dist.1982), quoting *Seabold v. Seabold*, 84 Ohio App. 83, 88 (9th Dist.1948). As such, "an adjudication of incompetency prior to marriage is not necessarily conclusive proof of the person's incapacity to enter a valid marriage." *Id*. *See In re Kindell*, 2d Dist. No. 2022-CA-8, 2022-Ohio-3456, ¶ 33, quoting 53 Ohio Jurisprudence 3d, Guardian and Ward, Section 63, at 81 (2017) (explaining that the appointment of a guardian " 'does not necessarily preclude such ward from entering into a marriage' " because, " 'as to matters that in no way conflict with the guardian's authority, the appointment of a guardian is only prima facie evidence of incompetency' "). Accordingly, Henry could have been competent to marry but incompetent for all other purposes.

**{¶ 39}** The trial court also concluded that the fact "[Henry] and [Mary] were able to petition the probate court to marry in 2014 without counsel" demonstrated that Henry was "able to protect his rights in a court of justice." (Decision at 16.) However, viewing the pro

se request to marry in a light most favorable to Mary, this fact demonstrates only that Mary was able to petition the probate court. It does not demonstrate any independent conduct by Henry or that Henry was able to assert his rights in court without Mary's assistance. *See* R.C. 2111.17 (stating that a guardian may file suit "on behalf of the ward"). *See also Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, paragraph two of the syllabus, ¶ 25 (explaining that a probate court's "appointment of a guardian" for a "person of unsound mind" does not "commence[] the running of the statute of limitations," because the "term 'disability' as used in R.C. 2305.16 does not refer to the legal inability to commence suit; rather it refers only to the two descriptions of minority and unsound mind").

**{¶ 40}** In ruling on appellees' motions for summary judgment, the trial court acknowledged that Mary relied on "numerous experts," "medical records," and a statement of expert evaluation from the probate court case to support her contention that Henry "was mentally impaired and suffered severe cognitive impairments due to [traumatic brain injury]," thereby rendering him "of unsound mind." (Decision at 10.) The trial court stated that it was "not persuaded by the contradictions put forth by [Mary]" and that Mary did not meet her "burden of presenting evidence substantiating a claim that R.C. 2305.16" tolled the limitations period. (Decision at 16.)

**{¶ 41}** Although the trial court noted Mary's reliance on expert statements and Henry's medical records, the trial court did not further address any of the statements contained in the affidavits or depositions presented by Mary in support of her brief in opposition to summary judgment. "Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment. The failure of a trial court to comply with this requirement constitutes reversible error." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992), syllabus. *See A-M.R. v. Columbus City School Dist.*, 10th Dist. No. 14AP-1066, 2015-Ohio-3781, ¶ 15, 19 (finding reversible error because the trial court's decision "provide[d] no indication that the trial court examined O.R.'s deposition testimony or any of the materials attached to A-M.R.'s memorandum in opposition to summary judgment"); *Kramer v. Brookwood Retirement Community*, 1st Dist. No. C-920182 (Aug. 4, 1993).

{¶ 42} However, the trial court acknowledged some of Mary's summary judgment evidence and stated that it was not persuaded by Mary's evidence. Generally, absent proof in the record to the contrary, this court must presume the correctness of the trial court proceedings. *Horvath v. Nationwide Mut. Fire Ins. Co.*, 108 Ohio App.3d 732, 736 (10th Dist.1996). *Compare Murphy* at 357 (finding the trial court did not consider the summary judgment evidence because the court expressly informed the parties it "had not read any of the evidence submitted in support of, or in opposition to, the motion"); *with Gibbs v. Mark Porter Autoplex, Inc.*, 4th Dist. No. 23CA3, 2023-Ohio-3460, ¶ 16 (noting that, because the trial court's summary judgment decision stated the court "considered 'transcripts of depositions,' " the "fact that the court did not specifically mention Dr. Eck's deposition [did] not prove the court did not consider it"). Accordingly, to the extent we may presume the trial court complied with its mandatory duty to examine the summary judgment evidence, we review the evidence de novo.

{¶ 43} Mary supported her brief in opposition to summary judgment with the expert report and affidavit of Dr. Granacher. In his affidavit, Dr. Granacher explained he had reviewed Henry's medical records from 2011 and that he examined Henry on January 30, 2018. (Brief in Opp. to Mot. for Summ. Jgmt., Ex. 4, Granacher Aff. at ¶ 3-6, 8.) *See State v. Solomon*, 59 Ohio St.3d 124, 126 (1991), citing Evid.R. 703 (stating that an expert may base their opinion on "perceptions or facts or data admitted in evidence") (Emphasis omitted.); *In re Estate of Flowers*, 6th Dist. No. L-16-1002, 2017-Ohio-1310, ¶ 76. Dr. Granacher explained that Henry's subdural hematoma "began prior to October 3, 2011," and that Henry continued to experience "bleeding into his subdural space" between that time and the October 30, 2011 surgery. (Granacher Aff. at ¶ 9-10.) Dr. Granacher averred that, in his opinion, Henry had "been of unsound mind from October 3, 2011 through the present." (Granacher Aff. at ¶ 11.) At his deposition, Dr. Granacher testified that Henry was "incompetent" as of October 4, 2011, because by that date Henry "lacked the mental capacity to act on his own for any reason." (Granacher Depo. at 207.)

{¶ 44} Mary explained in her affidavit that, from October 1 to 28, 2011, Henry became unkempt, withdrawn, confused, irresponsible, threatened to commit suicide, and threatened her with violence. (Mary Aff. at ¶ 3-6.) Mary noted that Henry's conduct in October 2011 was "not consistent with the person [she] knew prior to September 28, 2011."

(Mary Aff. at ¶ 3.) Mary stated that, since the October 30, 2011 surgery, Henry had remained "totally and continuously dependent upon [her] for his care and at all times been unable to read or write sentences, engage in conversation, comprehend complex subject matters or manage any of his financial matters." (Mary Aff. at ¶ 13.) Mary averred that, in her opinion, Henry had "not been of sound mind" since October 1, 2011, because he was "mentally incapable of looking after his own affairs, effectively communicating with his attorney or anyone else or assisting in the preparation of this case." (Mary Aff. at ¶ 15.)

{¶ 45} The certified medical records demonstrate that, in early October 2011, Henry made suicidal statements, appeared disheveled, agitated, angry, and irritable, his thought process demonstrated memory loss, his judgment and insight were poor, and he was unable to follow instructions. Dr. Granacher explained at his deposition that, as a subdural hematoma grows in the brain, "it causes, first, behavioral symptoms, and then physical symptoms." (Granacher Depo. at 46.) Dr. Granacher stated that the descriptions of Henry's mental state in the October 2011 medical records were all "brain signs." (Granacher Depo. at 50.)

{¶ 46} A December 2, 2013 statement of expert evaluation completed by Govindarajan Sampath, M.D. for the probate court noted that, following the October 2011 surgery, Henry "never made a full recovery," was "left with severe neurological deficits," and he had "severely compromised cognitive functions like comprehension, intelligence, and problem solving." (Brief in Opp. to Summ. Jgmt., Ex. 6.) *See* Sup.R. 66(A). Dr. Sampath concluded in the 2013 statement that Henry was "unable to give informed consent for any medical intervention" and that he "need[ed] a guardian for person and estate to protect his interests." (Ex. 6.) Dr. Sampath completed statements of expert evaluation in 2016 and 2018, which continued to indicate that Henry had "impaired comprehension" and did not have "the capacity to make decisions about his health care or estate." (Brief in Opp. to Summ. Jgmt., Ex. 8; Ex. 9 at 3-4.)

{¶ 47} Viewing the evidence in a light most favorable to Mary, the evidence demonstrates a genuine issue of material fact regarding whether Henry has continually been of unsound mind since his cause of action accrued in October 2011. The probate court's January 24, 2021 order stated that Henry had been continually incompetent since September 28, 2011, the affidavits from Dr. Granacher and Mary stated Henry had been of

unsound mind since October 2011, the medical records documented Henry's worsening mental state in October 2011, and the statements of expert evaluation demonstrated that Henry continued to suffer serious cognitive impairment from 2013 onward. The fact that Henry had counsel in 2012, that counsel filed *Adkins I* in Henry's individual capacity, and that the probate court allowed Mary and Henry to marry in 2014 did not preclude reasonable minds from finding that Henry was of unsound mind during the relevant time frame. The trier of fact may, however, consider and weigh these facts when resolving the unsound mind issue.

{¶ 48} Accordingly, because there are genuine issues of material fact regarding whether R.C. 2305.16 tolled the time within which Mary had to bring the medical claims at issue, the trial court erred by granting appellees' motions for summary judgment. Based on the foregoing, we sustain Mary's second assignment of error.

## IV. Conclusion

{¶ 49} Having overruled Mary's first assignment of error, but having sustained Mary's second assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand for further proceedings consistent with law and this decision.

*Judgment reversed,*
*cause remanded.*

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

———————————